T.C. Summary Opinion 2020-12

UNITED STATES TAX COURT

EDWIN D. BENTON AND SHEILA E. BENTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9320-18S.                          Filed March 11, 2020.

<u>Steven H. Hornstein</u>, for petitioners.

<u>Estevan D. Fernandez</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, all section references are to the Internal

<span style="float:right">(continued...)</span>

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioners are liable for a Federal income tax deficiency of $28,896 for the taxable year 2013 (year in issue), an addition to tax for late filing under section 6651(a)(1) of $6,595, and an accuracy-related penalty under section 6662(a) of $5,779. Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a). When the petition was filed, petitioners resided in California.

After concessions,[2] the issues remaining for decision are whether petitioners are (1) entitled to deductions claimed on Schedule C, Profit or Loss From Business, for various expenses, (2) liable for the 10% additional tax imposed on

---

[1](...continued)
Revenue Code, as amended and in effect for 2013, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]The parties agree that petitioners are (1) entitled to a deduction of $1,220 on Schedule A, Itemized Deductions, for cash gifts to charity and (2) not liable for an accuracy-related penalty under sec. 6662(a). Respondent acknowledges that, although the notice of deficiency specifies that petitioners are not entitled to a deduction of $42,200 for rental expenses, petitioners in fact claimed a deduction of only $42,000 for rental expenses.

early distributions from qualified retirement plans under section 72(t), and (3) liable for an addition to tax under section 6651(a)(1).[3]

Background[4]

## I. Mr. Benton's Picture Framing Business

During the year in issue Mr. Benton engaged in a picture framing business. He sold framed photos, prints, and artwork and enlarged photos and arranged framing services for his customers. Mr. Benton usually enlarged the photos himself at Costco and paid a third party to provide framing services for his customers.

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for the year in issue and attached to it a Schedule C related to Mr. Benton's business. Mr. Benton reported gross receipts from the activity of $15,475, offset by total expenses of $70,350, resulting in a net loss of $54,875. The expenses in dispute in this case include rental expenses of $42,000, "Other" expenses of $7,000, and vehicle expenses of $8,475.

---

[3]Other adjustments are computational and flow from our decision in this case.

[4]Some of the facts have been stipulated.

A.  Rental Expense

Mr. Benton conducted his business in a house in a residential community near Los Angeles, California.  The house included a living room, a dining room, a kitchen, three bedrooms, and two bathrooms.  Petitioners did not reside in the house.

Mr. Benton rented the house and claimed a deduction of $42,000 for rental expenses on Schedule C.  He produced bank records which show that he paid rent of $38,576 during the year in issue.

B.  Other Expenses

Mr. Benton claimed a deduction of $7,000 for "Other" expenses identified on Schedule C as factory production fees of $6,000 and graphics and laboratory fees of $1,000.  In an effort to substantiate this item Mr. Benton offered copies of two purchase orders totaling $8,135 for several hundred T-shirts.

C.  Vehicle Expenses

Mr. Benton reported on Schedule C that he drove 15,000 miles for business purposes during the year in issue and claimed a deduction of $8,475 for vehicle expenses.  Mr. Benton did not produce a mileage log and explained at trial that he lost not only his original log but also two reconstructed logs.

Mr. Benton produced 32 invoices from Best Picture & Frame Co. (BPFC), the third party that he hired to provide framing services for his customers, and explained that he made numerous round trips from his business address to Costco, and on to BPFC, in the course of dropping off and later picking up framing projects for his customers.

## II. Mrs. Benton's Income

Mrs. Benton received and reported wages of $30,911 and $14,776 from a law firm and a staffing agency, respectively, during the year in issue. Mrs. Benton was laid off during part of the year in issue and received unemployment compensation of $9,186.

Mrs. Benton also received and reported a taxable distribution of $25,025 from an individual retirement account (IRA) during the year in issue. Petitioners attached Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, to their tax return and reported additional tax of $2,502 in connection with Mrs. Benton's IRA distribution.

## III. Late Filed Tax Return

On April 15, 2014, petitioners obtained an extension to file their 2013 tax return on or before October 15, 2014. Petitioners filed their tax return for 2013 on April 11, 2016.

In February 2013 Mr. Benton retired from his job as a parole agent for the California Department of Corrections. In addition to his framing business Mr. Benton worked part time as a security guard at a movie theater. In 2013 and 2014 Mrs. Benton worked sporadically in temporary positions.

Mr. Benton's brother was very ill during the year in issue, and he passed away in May 2014. Mr. Benton devoted time and attention to wrapping up his brother's affairs and suffered emotionally from his brother's passing.

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[5] Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

---

[5]Under sec. 7491(a)(1) the burden of proof may shift from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability. Petitioners did not allege that sec. 7491(a)(1) applies, nor did they introduce the requisite evidence to invoke that section; therefore, the burden of proof remains on petitioners.

I. <u>Schedule C Expenses</u>

A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976); <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. at 89-90.

Under section 162(a) a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Whether an expenditure satisfies the requirements for deductibility under section 162 generally is a question of fact. <u>See</u> <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943). An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, <u>Commissioner v. Heininger</u>, 320 U.S. at 471; sec. 1.162-1(a), Income Tax Regs.

A.  Rental Expenses

Respondent disallowed the $42,000 deduction that Mr. Benton claimed on Schedule C for rental expenses.  As with all other business expenses, the taxpayer must establish that the expense has been paid or incurred and the amount of the expense.  Sec. 6001.  The record shows that Mr. Benton paid rent of $38,576 during the year in issue.

In disallowing the rental expense deduction, respondent relies on section 280A(a), which sets forth the general rule that a taxpayer may not claim a deduction "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  Respondent's reliance on section 280A(a) in this case is misplaced.

The parties stipulated that petitioners did not reside in the house where Mr. Benton conducted his business.  Mr. Benton testified that he used the house exclusively for business purposes and offered photos to show that he displayed framed pictures and various types of artwork in some of the rooms.  In addition one of Mr. Benton's customers appeared at trial and testified that she visited the house two or three times during the year in issue to pick up photos that Mr. Benton had framed for her and it was her impression that he used the house to conduct the

framing business. We conclude that petitioners did not use the house in question as a residence, see sec. 280A(d), and that section 280A is not applicable.

Although conducting a picture framing business in a house in a residential community might be considered unusual, we conclude that the rent Mr. Benton paid was an ordinary and necessary expense within the meaning of section 162(a). The expense was ordinary in that obtaining adequate space to display framed photos and other artwork is one that commonly or frequently occurs in connection with a picture framing business. The expense likewise was necessary in that Mr. Benton had a convenient place to meet with potential customers and otherwise conduct business with them. It follows that petitioners are entitled to a deduction for rental expenses of $38,576.

B. "Other" Expenses

Respondent disallowed a deduction of $7,000 that Mr. Benton claimed for expenses that were identified on Schedule C as factory production fees of $6,000 and graphics and laboratory fees of $1,000. Mr. Benton testified that the expenses actually related to cash payments of $8,135 that he made to a vendor for T-shirts. Although he offered copies of two purchase orders for T-shirts, his testimony regarding the purchase orders was vague and inconsistent. Moreover, on close examination, the dates on the purchase orders appear to have been altered, casting

doubt on their authenticity and relevance. On this record the Court finds that there is insufficient evidence showing that Mr. Benton paid or incurred "Other" expenses of $7,000. Respondent's determination to disallow this deduction is sustained.

C. Vehicle Expenses

Respondent disallowed a deduction of $8,475 that Mr. Benton claimed on Schedule C for vehicle expenses. Respondent maintains that Mr. Benton failed to substantiate this item.

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including expenses related to the use of listed property as defined in section 280F(d)(4). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). The term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(I).

To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own statement, which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure or business use of listed property. Sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg.

46016-46017 (Nov. 6, 1985). Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Section 1.274-5(j)(2), Income Tax Regs., provides in relevant part that a taxpayer who elects to use the optional standard mileage rate method to compute vehicle expenses must nevertheless meet the strict substantiation requirements of section 274(d). Moreover, the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Taxpayers lacking a contemporaneous log are expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

If a taxpayer's records have been destroyed or lost due to circumstances beyond his or her control, the taxpayer may substantiate expenses subject to

section 274(d) by making a reasonable reconstruction of the expenditures through other credible evidence. Boyd v. Commissioner, 122 T.C. 305, 320 (2004); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). A taxpayer is required to reconstruct pertinent records to the fullest extent possible. See, e.g., Chong v. Commissioner, T.C. Memo. 2007-12.

Mr. Benton testified that he lost his mileage log and two reconstructed logs. At trial he attempted to substantiate the number of miles that he drove for business purposes by offering invoices for framing services and estimating the number of round trips that he made from his business address, to Costco (where he enlarged photos for his customers), and then to BPFC for framing services.

Although there is little doubt that Mr. Benton drove some distance for business purposes, his testimony and the spotty records that he offered amounted to little more than guesswork and failed to satisfy the strict substantiation requirements for vehicle expenses prescribed in section 274(d) and related regulations. As noted above the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Consequently, respondent's determination disallowing a deduction for vehicle expenses is sustained.

II. Section 72(t)

As a general rule, if a taxpayer receives a distribution from a qualified retirement plan before attaining the age of 59½, section 72(t) imposes an additional tax equal to 10% of the portion of the distribution which is includible in the taxpayer's gross income.[6] Sec. 72(t)(1) and (2). The additional tax is intended to discourage taxpayers from taking premature distributions from retirement plans--actions that frustrate public policy encouraging saving for retirement. See Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing and discussing the legislative history underlying section 408(f), the statutory predecessor to section 72(t)); Milner v. Commissioner, T.C. Memo. 2004-111.

Although petitioners reported additional tax of $2,502 in connection with Mrs. Benton's IRA distribution, they now maintain that a portion of the distribution was excepted from the additional tax under section 72(t)(2)(D). That section provides an exception to the additional tax imposed under subsection (t) in the case of a distribution from an IRA to an individual who has separated from employment if the individual receives unemployment compensation for 12 consecutive weeks by reason of such separation, the IRA distribution is made

---

[6]The definition of "qualified retirement plan" includes an IRA as described in sec. 408(a). See secs. 72(t)(1), 4974(c)(4). There is no dispute that Mrs. Benton had not attained the age of 59½ during the year in issue.

during the taxable year in which the unemployment compensation is paid or the succeeding taxable year, and the distribution does not exceed the amount paid during the taxable year for medical insurance for the individual and the individual's spouse and dependents.

The record shows that during the year in issue Mrs. Benton received wages of $30,911 and $14,776 from a law firm and a staffing agency, respectively, and unemployment compensation of $9,186. Although Mr. Benton testified generally that Mrs. Benton was laid off in early 2013 and worked at temporary jobs, there is no evidence of the specific period during which she received unemployment compensation and, more specifically, whether she received unemployment compensation for 12 consecutive weeks as is required to qualify for the exception under section 72(t)(2)(D). In sum petitioners have not established that Mrs. Benton is eligible for an exception to the additional tax prescribed in section 72(t).

III. Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The addition to tax is equal to 5% of the amount of the tax required to be shown on the return if the failure to file is not for more than one

month. Sec. 6651(a)(1). An additional 5% is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25% of the tax. Id.

Under section 7491(c), the Commissioner bears the burden of producing sufficient evidence that it is appropriate to impose the addition to tax under section 6651(a)(1). See also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets this burden, the taxpayer bears the burden of persuasion that the addition to tax does not apply because the failure to file was due to reasonable cause and not willful neglect. See id. at 447. Respondent carries his burden of production in the instant case by virtue of the parties' stipulation that petitioners did not timely file their 2013 return on or before the extended due date.

Petitioners, if they are to prevail, must prove that the failure to timely file (1) did not result from willful neglect and (2) was due to reasonable cause. See United States v. Boyle, 469 U.S. 241, 245-246 (1985); Crocker v. Commissioner, 92 T.C. 899, 912-913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect has been defined as a "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245. Reasonable cause exists where the taxpayer exercised ordinary business care and prudence but was nevertheless unable to file the return and pay the tax by the dates prescribed by law. Id. at 246.

The existence of reasonable cause or willful neglect is a question of fact. Id. at 249 n.8.

Petitioners assert that their failure to timely file was due to a confluence of personal and financial difficulties including Mr. Benton's retirement and part-time employment, Mr. Benton's brother's serious illness and death, and Mrs. Benton's loss of her job. Petitioners contend that the cumulative effect of these circumstances constitutes reasonable cause sufficient to negate the addition to tax.

The Court has found reasonable cause for failure to timely file a return where the taxpayer or a member of the taxpayer's family experiences an illness or incapacity that prevents the taxpayer from filing a tax return. See, e.g., Tabby v. Commissioner, T.C. Memo. 1995-463 (finding reasonable cause where the taxpayers' son had heart surgery, the taxpayers spent four months in the hospital with him, and they filed their tax return two months after their son's death). In contrast the Court has not found reasonable cause where the taxpayer does not timely file but is able to continue to conduct his or her business affairs despite the illness or incapacity. See, e.g., Ruggeri v. Commissioner, T.C. Memo. 2008-300, slip op. at 7-8 (and cases cited thereat).

While we are sympathetic to petitioners' difficulties, we are not persuaded that the challenges they faced satisfy the reasonable cause requirement of section

6651(a)(1). To the contrary, and despite those challenges, petitioners were able to engage in ordinary business activities. Mr. Benton continued to operate his picture framing business and held a part-time job, while Mrs. Benton was able to maintain temporary employment during 2013 and 2014.

Although petitioners obtained an extension to file their 2013 return (with a due date in October 2014), they did not file the return until April 2016--nearly 18 months later. We conclude that petitioners failed to act with ordinary business care and prudence with respect to their 2013 Federal tax filing obligation, and we sustain respondent's determination that they are liable for an addition to tax under section 6651(a)(1).

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.